Chase Berger, Esq. (24115617)
GHIDOTTI BERGER, LLP
9720 Coit Road Suite 220-228
Plano, Texas 75025
Ph:  (305) 501-2808
Fax: (954) 780-5578
bknotifications@ghidottiberger.com

**Attorneys for Movant,**
Carvana, LLC, its successors and/or assignees

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | CASE NO.: 21-30214-hcm |
| | § | |
| **Fay Genice Parm,** | § | CHAPTER 13 |
| | § | |
| **DEBTOR,** | § | |
| | § | |
| **Carvana, LLC, its successors and assigns,** | § | |
| | § | |
| **MOVANT,** | § | |
| | § | |
| **Fay Genice Parm, and** | § | |
| **Stuart C. Cox, Trustee,** | § | |
| | § | |
| **RESPONDENTS.** | § | |

## WITNESS AND EXHIBIT LIST – MOTION FOR RELIEF

Carvana, LLC, its successors and/or assignees ("**Movant**"), by and through the undersigned attorney, files this Witness and Exhibit List for the hearing of Movant's Motion for Relief from the Automatic Stay Against Debtor Regarding Personal Property 2019 Jeep Grand Cherokee VIN 1C4RJEAGXKC776523 Pursuant to 11 U.S.C. § 362 in the above-captioned action (Doc. 41), set for hearing at 1:30 p.m. on December 22, 2021.

## WITNESSES

Movant hereby submits its proposed witness list and reserves the right to call any or all of the below listed witnesses and any other witness called by Debtor or any other interested party.

Movant further reserves its right to call any witnesses subsequently deemed by Movant to be important to this action.  This list does not include impeachment witnesses.

1. Jennifer Cruise, Carvana, LLC.

2. Any witness called by Debtor.

3. Any witness called by any other interested party.

## **EXHIBITS**

Movant hereby submits its Preliminary Exhibit List in the above-captioned action, without prejudice to its right to introduce exhibits subsequently discovered or determined to be important to this action or to change the order of exhibits presented.  This list also does not include matters relating to impeachment.

1. **Exhibit "1,"** Motor Vehicle Retail Installment Contract and Security Agreement;

2. **Exhibit "2,"** Lien and Title Information;

3. **Exhibit "3,"** Payment History;

4. **Exhibit "4,"** Affidavit of Jennifer Cruise;

5. **Exhibit "5,"** Amended Chapter 13 Plan (Doc. 14);

6. **Exhibit "6,"** Order Confirming the Plan (Doc. 32);

7. Any Exhibit relied upon by Debtor; and

8. Any Exhibit relied upon by any interested party.

Dated: December 16, 2021

Respectfully submitted,

/s/ Chase Berger
Chase Berger, Esq.
State Bar No.: 24115617
9720 Coit Road Suite 220-228
Plano, Texas 75025
Ph:  (305) 501-2808
Fax: (954) 780-5578
bknotifications@ghidottiberger.com
**COUNSEL FOR MOVANT**

## CERTIFICATE OF SERVICE

I am employed in the County of Clark, State of Nevada.  I am over the age of eighteen and not a party to the within action.  My business address is: 7251 West Lake Mead Blvd, Ste 470, Las Vegas, NV 89128.  I am readily familiar with the business's practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of business.

On December 16, 2021, I served the following document described as:

- **WITNESS AND EXHIBIT LIST – MOTION FOR RELIEF**

on the interested parties in this action by placing a true and correct copy thereof in a sealed envelope addressed as follows:

(Via United States Mail)

| Debtor | Debtor's Counsel |
|---|---|
| **Fay Genice Parm** | **Miguel Alejandro Flores** |
| 509 Gentry Way | Tanzy & Borrego Law Offices |
| El Paso, TX 79928 | 2610 Montana |
| | El Paso, TX 79903 |
| | |
| | **Chapter 13 Trustee** |
| | **Stuart C. Cox** |
| | El Paso Chapter 13 Trustee |
| | 1760 N. Lee Trevino Dr. |
| | El Paso, TX 79936 |

  xx    (By First  Class Mail) At my business address, I placed such envelope for deposit with the United States Postal Service  by placing them for collection and mailing on that date following ordinary business practices.

_____Via Electronic Mail pursuant to the requirements of the Local Bankruptcy Rules of the Eastern District of California

  xx  (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 16, 2021, at Las Vegas, Nevada,

*/s /Regina Habermas*
Regina Habermas

# EXHIBIT "1"

**CARVANA**

1930 W. Rio Salado Pkwy
Tempe, AZ 85281
Office: 602.852.6604
Fax: 602.667.2581
Email: legal@carvana.com

Date: August 28, 2019

To Whom It May Concern,

This letter shall serve as formal acknowledgement that Bridgecrest is a valid loan servicer for Carvana loans.

If you have any questions, please contact me at the email address or phone number above.

Sincerely,

Name: Paul Breaux

Title: General Counsel, Vice President, and Secretary

This is a copy view of the Authoritative Copy held by the designated custodian.

TX-102 9/15/2016

# Motor Vehicle Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| CARVANA, LLC | Fay Genice Parm | No. ▉▉▉▉ |
| 1123 CANTRELL SANSOM RD | 509 Gentry Way | Date 02/03/2021 |
| BLUE MOUND TX 76131-1411 | El Paso TX 79928-7217 | |

Phone Number  1-800-333-4554          Phone Number(s) ▉▉▉▉

Purchased for personal, family or household use unless otherwise indicated: ☐ Business, commercial or agricultural purpose Contract.

## Sales Agreement and Promise to Pay

**Purchase on Credit.** The credit price is shown below as the "Total Sale Price." The "Cash Price" is also shown below. By signing this Contract, you choose to purchase on credit the motor vehicle and all other property and services described in this Contract according to the terms of this Contract.

**Promise to Pay.** You promise to pay us the principal amount of $ ___29,780.86___ plus finance charges accruing on the unpaid balance at the rate of ___16.466___ % per year from the date of this Contract until maturity. After maturity, or after you default and we demand payment, we will charge finance charges on the unpaid balance at ___16.466___ % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

We use the True Daily Earnings Method. See the *Additional Terms of the Sales Agreement* section – *How We Figure the Finance Charge* provision for an explanation of this method.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed* section.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

You have thoroughly inspected, accepted, and approved the motor vehicle in all respects. Seller will not make any repairs or additions to the motor vehicle except as noted in the *Description of Property* section.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2019 | Jeep | Grand Cherokee | Sport Utility | 1C4RJEAGXKC776523 | 13495 |

☐ New
☒ Used          Other:          N/A
☐ Demo

## Description of Trade-In

| | | | | |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |

## Truth-In-Lending Disclosure

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid when you have made all scheduled payments. | The total cost of your purchase on credit, including your down payment of $ 400.00 . |
| 16.466 % | $ 17,289.50 | $ 29,780.86 | $ 47,070.36 | $ 47,470.36 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 654.00 | monthly beginning 03/05/21 |
| 1 | $ 636.36 | 02/05/27 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 15 days of its due date, you will be charged a late charge of 5% of the unpaid portion of the payment due.

**Prepayment.** If you pay off all or part of this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date and prepayment refunds.

## Negotiability

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

Retail Installment Contract-TX Not for use in transactions secured by a dwelling.
Bankers Systems®
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM, CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZTX 9/15/2016
Page 1 of 5

FP

DocuSign Envelope ID: ...

This is a copy view of the Authoritative Copy held

## Itemization of Amount Financed

1. **Cash Price** (including any accessories, services and taxes)

   (A) Cash Price of motor vehicle being purchased
   (including sales tax of $ ___1,686.88___ )   $ ___28,676.88___

   (B) Cash Price of ___N/A___   $ ___N/A___

   (C) Cash Price of ___N/A___   $ ___N/A___

   (D) Cash Price of ___N/A___   $ ___N/A___

   (E) Cash Price of ___N/A___   $ ___N/A___

   Total Cash Price   $ ___28,676.88___ (1)

2. **Downpayment =**

   (A) Gross trade-in   $ ___0.00___

   (B) - payoff by Seller paid to (includes 4.(A)):
   ___N/A___   $ ___0.00___

   (C) = net trade-in (if negative, enter "0" and see Line 4.(A))   $ ___0.00___

   (D) + cash   $ ___400.00___

   (E) + Mfrs. Rebate   $ ___N/A___

   (F) + Deferred Downpayment   $ ___N/A___

   (G) + other (describe) ___N/A___   $ ___N/A___

   Total downpayment   $ ___400.00___ (2)

3. **Unpaid balance of cash price** (1 minus 2)   $ ___28,276.88___ (3)

4. **Other charges including amounts paid to others on your behalf**

   (Seller may keep part of these amounts.):

   (A) Net trade-in payoff   $ ___0.00___

   (B) Cost of physical damage insurance paid to insurance co.   $ ___N/A___

   (C) Cost of optional credit insurance paid to insurance
   company or companies   $ ___N/A___

   Life ___N/A___ $ ___N/A___

   Disability ___N/A___ $ ___N/A___

   (D) Other insurance paid to insurance company
   ___N/A___   $ ___N/A___

   (E) Debt cancellation agreement fee paid to the Seller   $ ___N/A___

   (F) Official fees paid to government agencies   $ ___40.75___

   (G) Dealer's inventory tax if not included in cash price   $ ___59.73___

   (H) Sales tax if not included in cash price   $ ___N/A___

   (I) Other taxes if not included in cash price   $ ___N/A___

   (J) Government license and/or registration fees   $ ___50.75___

   (K) Government certificate of title fee   $ ___13.00___

   (L) Government vehicle inspection fees   $ ___39.75___

   to state   $ ___13.25___

   to inspection station $ ___26.50___

   (M) Deputy service fee paid to dealer   $ ___N/A___

   (N) **Documentary fee. A documentary fee is**   $ ___N/A___
   **not an official fee. A documentary fee is not required by law, but may be charged to buyers for handling documents relating to the sale. A documentary fee may not exceed a reasonable amount agreed to by the parties. This notice is required by law.**

   **Un cargo documental no es un cargo oficial. La ley no exige que se imponga un cargo documental. Pero éste podría cobrarse a los compradores por el manejo de la documentación en relación con la venta. Un cargo documental no puede exeder una cantidad razonable acordada por las partes. Esta notificación se exige por ley.**

   (O) Other charges (Seller must identify who is paid and describe purpose)

   to ___Carvana___ for ___Vehicle Protection___ $ ___1,300.00___

   to ___N/A___ for ___N/A___ $ ___N/A___

   to ___N/A___ for ___N/A___ $ ___N/A___

   to ___N/A___ for ___N/A___ $ ___N/A___

   to ___N/A___ for ___N/A___ $ ___N/A___

   Total other charges and amounts paid to others on your behalf   $ ___1,503.98___ (4)

5. **Amount Financed** (3 + 4)   $ ___29,780.86___ (5)

Bankers Systems®
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM, CONSULT YOUR OWN LEGAL COUNSEL.

FP

## Insurance Disclosures and Debt Cancellation Agreement

**Optional Credit Insurance Coverages and Debt Cancellation Agreement.** Credit life, credit disability (accident and health), involuntary unemployment, GAP insurance and Debt Cancellation Agreement are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premiums or charges. If you want such insurance or Debt Cancellation Agreement, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the insurance coverages and Debt Cancellation Agreement you have chosen to purchase.

**Credit Life Insurance**
☐ Single   ☐ Joint   ☒ None

Premium $ ___N/A___   Term ___N/A___

Insured ___N/A___

**Credit Disability Insurance**
☐ Single   ☐ Joint   ☒ None

Premium $ ___N/A___   Term ___N/A___

Insured ___N/A___

**GAP Insurance\***
☐ Requested   ☒ None

Premium $ ___N/A___   Term ___N/A___

**Debt Cancellation Agreement\*\***
☐ Requested   ☒ None

Charge $ ___N/A___   Term ___N/A___

**Involuntary Unemployment Insurance**
☐ Single   ☐ Joint   ☒ None

Premium $ ___N/A___   Term ___N/A___

Insured ___N/A___

Agent/Policy Fee: $ ___N/A___

\* If the Vehicle is determined to be a total loss, GAP Insurance will pay the difference between the proceeds of your basic collision policy and the amount you owe on the Vehicle, minus your deductible. See your insurance policy for specific terms and conditions. You can cancel this insurance without charge for 10 days from the date of this Contract.

\*\* WE WILL CANCEL CERTAIN AMOUNTS YOU OWE UNDER THIS CONTRACT IN THE CASE OF A TOTAL LOSS OR THEFT OF THE VEHICLE AS STATED IN THE DEBT CANCELLATION AGREEMENT. See your separate Debt Cancellation Agreement for specific terms and conditions. You can cancel the Debt Cancellation Agreement without charge for a period of 30 days from the date of this Contract or for the period stated in the Debt Cancellation Agreement, whichever period ends later.

Credit life insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance does not cover any increase in your payment or in the number of payments.

(Contracts with a balloon payment.) Credit Life Insurance is for the scheduled term of this contract. Credit Disability Insurance covers the first ___N/A___ payments and does not cover the last scheduled payment.

The premium rates are not fixed or approved by the Texas Insurance Commissioner for: 1) credit life and credit disability insurance with a term greater than 120 months, 2) GAP Insurance, and 3) credit involuntary unemployment insurance. A Debt Cancellation Agreement is not insurance and is regulated by the Office of Consumer Credit Commissioner.

**Your signature below means you want (only) the insurance coverage(s) and Debt Cancellation Agreement protection quoted above for the stated additional charges. If "None" is checked, you have declined the coverages and protections we offered.**

___N/A___   ___N/A___

By: ___   DOB

___N/A___   ___N/A___

By: ___   DOB

___N/A___   ___N/A___

By: ___   DOB

This is a copy view of the Authoritative Copy held by the designated custodian

**Property Insurance.** You must insure the Property. You shall have the option of furnishing the required insurance either through existing policies of insurance owned or controlled by you or procuring or furnishing the equivalent insurance coverage through any insurance company authorized to transact business in Texas. The maximum deductible is $ __1000__ . If you get insurance from or through us you will pay $ ____N/A____ for ____N/A____ of coverage.

This premium is calculated as follows:

☐ $ ____N/A____ Deductible, Collision Cov. $ ____N/A____
☐ $ ____N/A____ Deductible, Comprehensive $ ____N/A____
☐ Fire-Theft and Combined Additional Cov. $ ____N/A____
☐ _____ $ ____N/A____

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT UNLESS CHECKED AND INDICATED.**

☐ If checked, the premium for property insurance is not fixed or approved by the Texas Insurance Commissioner.

If the premium for a required coverage, you have the option, for a period of 10 days from the date you receive a copy of this Contract, of furnishing that coverage through existing policies of insurance by obtaining like coverage from any insurance company authorized to do business in Texas.

## Additional Protections

**You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.**

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ **Service Contract**

Term ____36____ months
Price $ ____1,300.00____
Coverage ____Carvana Vehicle Protection____

☐ ____N/A____
Term ____N/A____
Price $ ____N/A____
Coverage ____N/A____

☐ ____N/A____
Term ____N/A____
Price $ ____N/A____
Coverage ____N/A____

*Fay Parm*                                    02/03/2021
**By:** ____Fay Genice Parm____    **Date**

____N/A____                                    02/03/2021
**By:** ____N/A____    **Date**

____N/A____                    ____N/A____
**By:** ____N/A____    **Date**

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Motor Vehicle Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract.

You agree that the Property will not be used as a dwelling.

**How We Figure the Finance Charge.** The rate of finance Charge is stated earlier in the *Sales Agreement and Promise to Pay* section. This rate may not be the same as the Annual Percentage Rate. We will figure the Finance Charge by applying the true daily earnings method, as defined by the Texas Finance Code. Using this method, the Finance Charge will be figured by applying the daily rate to the unpaid portion of the Amount Financed for the number of days the unpaid portion of the Amount Financed is outstanding. The daily rate is 1/365th of the contract rate. The unpaid principal balance does not include the late charges or returned payment charges, if any.

**How We Apply Payments.** We will apply your payments in the following order: 1. earned but unpaid finance charge; and 2. anything else you owe under this agreement.

**How Late or Early Payments Change What You Must Pay.** We based the Finance Charge, Total of Payments, and Total Sale Price as if all payments were made as scheduled. If you do not timely make all your payments in at least the correct amount, you will have to pay more Finance Charge and your last payment will be more than your final scheduled payment. If you make scheduled payments early, your Finance Charge will be reduced (less). If you make your scheduled payments late, your Finance Charge will increase.

**Prepayment.** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments.

**Returned Insurance Premiums and Service Contract Charges.** If we get a refund on insurance or service contracts, or other contracts that you paid under this Contract, you agree that we may subtract it from what you owe. Once all amounts owed under this Contract are paid, any remaining refunds will be paid to you.

**Special Provisions for Balloon Payment Contracts.** If any scheduled payment is more than twice as large as the average of all other regularly scheduled payments, you may refinance that payment when due without a refinancing fee. The terms we offer for that refinance must otherwise be as favorable as the original terms of this Contract. This right does not apply if your payment schedule is adjusted for seasonal or irregular income. You may also pay all you owe and keep the Vehicle.

**Returned Payment Charge.** If you make any payment required by this Contract that is dishonored, you agree to pay a fee of $30.00. We can add this fee to the amount you owe or collect it separately.

**Governing Law and Interpretation.** This Contract is governed by the law of Texas and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** From time to time you agree we may monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account.

Retail Installment Contract-TX Not for use in transactions secured by a dwelling.
Bankers Systems™
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM, CONSULT YOUR OWN LEGAL COUNSEL.

*FP*

RSSIMVLFLZTX 9/15/2016
Page 3 of 5

This is a copy view of the Authoritative Copy held

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

◆ You do not pay any amount in full when it is due.

◆ You fail to perform any other obligation that you have undertaken in this Contract.

◆ We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our reasonable out-of-pocket expenses as allowed by law and as further described in the *Additional Terms of the Sales Agreement* section - *Remedies* provision. You agree to pay our reasonable attorneys' fees after default and referral to an attorney who is not our salaried employee. You also agree to pay court costs and disbursements incurred in collecting amounts owing under this Contract.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

◆ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

◆ If a third party takes a lien or claim against or possession of the Property, we may (but are not required to) pay the third party any cost required to free it from all liens or claims. We may immediately demand that you pay us the amount paid to the third party for the Property and you agree to immediately pay us this amount. If you do not pay this amount, we may repossess the Property and add it to the amount you owe. If we do not repossess the Property, we may still demand that you pay us, but we will not add a finance charge on this amount.

◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

◆ If we take possession of the Property, we will tell you how much you have to pay to get it back. If you do not pay us to get the Property back, we can sell it or take other action allowed by law. Your right to redeem ends when the Property is sold or we have entered into a contract for sale or accepted the collateral as full or partial satisfaction of the Contract.

◆ If you do not redeem the Property, we may then sell it and apply what we receive as provided by law to our reasonable out-of-pocket expenses and then toward what you owe us. Our reasonable out-of-pocket expenses will be those incurred in connection with the repossession or sequestration of the Property or foreclosure of a security interest in the Property, including the costs of storing, reconditioning, and reselling it, subject to the standards of good faith and commercial reasonableness required by law.

◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. We will send you written notice at your last known address within 15 days of our discovery of such personal property. If you fail to claim that property as provided in the notice, we may retain or dispose of that property and disburse the proceeds, according to applicable law.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

◆ You must pay this Contract even if someone else has also signed it.

◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

◆ We may release any security and you will still be obligated to pay this Contract.

◆ If we give up any of our rights, it will not affect your duty to pay this Contract.

◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

**Waiver.** To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or (3) give notice that we intend to make, or are making, this Contract immediately due.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property described in the *Description of Property* section and *Additional Protections* section. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

◆ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

◆ You agree not to remove the Property from the U.S. without our prior written consent.

◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

◆ You will pay all taxes and assessments on the Property as they become due.

◆ You will notify us with reasonable promptness of any loss or damage to the Property.

◆ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures and Debt Cancellation Agreement* section, or as we will otherwise require. The insurer must be authorized to do business in Texas. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This premium amount will earn finance charges from the date we pay it at the applicable rate described in the *Sales Agreement and Promise to Pay* section until paid in full.

**GAP Liability or Total Loss of the Vehicle.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing GAP Insurance or a Debt Cancellation Agreement to cover the gap liability, subject to any conditions and exclusions in the applicable insurance policy or agreement.

## Notices

**Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Retail Installment Contract-TX Not for use in transactions secured by a dwelling.
Bankers Systems™
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

FP

RSSIMVLFLZTX 9/15/2016
Page 4 of 5

DocuSign Envelope ID:

This is a copy view of the Authoritative Copy held by Carvana's Document Custodian.

COPY VIEW

Used Car Buyer's Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation:

Guia para compradors de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract, including the *Additional Terms of the Sales Agreement* section - *Waiver* provision. However, you will not be liable for the payments required by the Contract, but your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| | |
|---|---|
| By: _____ | _____ |
| Signature of Third Party Owner (NOT the Buyer) | Date |

## Acknowledgment for Electronic Signatures

[X] **Electronic Signature Acknowledgment.** You agree that: (i) you viewed and read this entire Contract before signing it; (ii) you signed this Contract with one or more electronic signatures; (iii) you intend to enter into this Contract; (iv) your electronic signature has the same effect as your written ink signature; (v) you received a paper copy of this Contract after it was signed; and (vi) the authoritative copy of this Contract will reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in electronic form or as a paper version of it — which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of it. You may enforce the paper version of the Contract copy that you received.

## Signatures

**Entire Agreement and Modifications in Writing.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

| | |
|---|---|
| *Fay Parm* | 02/03/2021 |
| By:      Fay Genice Parm | Date |
| | |
| N/A | N/A |
| By: | Date |
| | |
| *[signature]* | 02/03/2021 |
| By:      CARVANA, LLC | Date |

---

Notice to the Buyer. Do not sign this Contract before you read it or if it contains any blank spaces. You are entitled to a copy of the Contract you sign. Under the law, you have a right to pay off in advance all that you owe and under certain conditions may save a portion of the Finance Charge. Keep this Contract to protect your legal rights.

BY SIGNING BELOW, YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU HAVE RECEIVED A COMPLETED COPY OF THIS CONTRACT AND HAD A CHANCE TO READ AND REVIEW IT BEFORE YOU SIGNED IT.

Buyer

| | |
|---|---|
| *Fay Parm* | 02/03/2021 |
| By:      Fay Genice Parm | Date |
| | |
| N/A | N/A |
| By: | Date |
| | |
| *[signature]* | 02/03/2021 |
| By:      CARVANA, LLC | Date |

Seller

| | |
|---|---|
| By: | Date |

THIS CONTRACT IS NOT VALID UNTIL YOU AND WE SIGN IT.

**OCCC NOTICE. For questions or complaints about this contract,** contact _Carvana, LLC_ _____ (name of creditor) at   1-800-333-4554   (phone) and   1930 W. Rio Salado Pkwy   Tempe, AZ 85281   (other contact information). The Office of Consumer Credit Commissioner (OCCC) is a state agency, and it enforces certain laws that apply to this contract. If a complaint or question cannot be resolved by contacting the creditor, consumers can contact the OCCC to file a complaint or ask a general credit-related question. OCCC address: 2601 N. Lamar Blvd., Austin, Texas 78705. Phone: (800) 538-1579. Fax: (512) 936-7610. Website: occc.texas.gov. E-mail: consumer.complaints@occc.texas.gov.

**Assignment.** This Motor Vehicle Retail Installment Contract and Security Agreement is assigned to N/A _____ , the Assignee, phone _____ N/A _____ . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

☐ This Assignment is made with recourse.

Seller

| | |
|---|---|
| N/A | N/A |
| By: | Date |

Retail Installment Contract-TX Not for use in transactions secured by a dwelling.
Bankers Systems ®
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

*FP*

RSSIMVLFLZTX 9/15/2016
Page 5 of 5

# EXHIBIT "2"

3/23/2021                                                ELT Print without Account Information



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Carvana LLC

## Lien and Title Information

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | |
| **Lienholder** | CARVANA LLC |
| **Lienholder Address** | PO BOX 29002<br>PHOENIX, AZ 85038 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 1C4RJEAGXKC776523 | **Issuance Date** | 3/19/2021 |
| **Title Number** | | **Received Date** | 3/19/2021 |
| **Title State** | TX | **ELT/Paper** | ELECTRONIC |
| **Year** | 2019 | **Odometer Reading** | 13516 |
| **Make** | JEEP | **Branding** | |
| **Model** | | | |
| **Owner 1** | FAY GENICE PARM | | |
| **Owner 2** | | | |
| **Owner Address** | 509 GENTRY WAY<br>EL PASO, TX 79928 | | |

**Printed:** Tuesday, March 23, 2021 7:40:31 AM PST

EXHIBIT "3"

| Transaction Date | Transaction Amount | Transaction Event | Fee Type | Current Due Date | Amount Due | Partial Pay | Remaining Due | Principal | Interest | Late Fee | Per Diem | Days Between Payments | Next Due Date | Principal Outstanding | Receipt Number | Lot Number | Check Number | Posted Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/20/2021 | (5.00) | Late Fee Assessment | | 7/5/2021 | 654.00 | 0.00 | 654.00 | 0.00 | 0.00 | (5.00) | 13.08 | | 7/5/2021 | 28,988.71 | 0 | 0 | | 10/20/2021 |
| 9/20/2021 | (5.00) | Late Fee Assessment | | 7/5/2021 | 654.00 | 0.00 | 654.00 | 0.00 | 0.00 | (5.00) | 13.08 | | 7/5/2021 | 28,988.71 | 0 | 0 | | 9/20/2021 |
| 8/20/2021 | (5.00) | Late Fee Assessment | | 7/5/2021 | 654.00 | 0.00 | 654.00 | 0.00 | 0.00 | (5.00) | 13.08 | | 7/5/2021 | 28,988.71 | 0 | 0 | | 8/20/2021 |
| 7/21/2021 | 22.53 | Principal Only Payment--Electronic Payment | | 7/5/2021 | 654.00 | 0.00 | 654.00 | 22.53 | 0.00 | 0.00 | 13.08 | 19 | 7/5/2021 | 28,988.71 | 4834407 | 10590 | 711120 | 7/22/2021 |
| 7/20/2021 | (5.00) | Late Fee Assessment | | 7/5/2021 | 654.00 | 0.00 | 654.00 | 0.00 | 0.00 | (5.00) | 13.09 | | 7/5/2021 | 29,011.24 | 0 | 0 | | 7/20/2021 |
| 7/2/2021 | 653.00 | Normal Payment--ONE TIME ACH PAYMENT | | 6/5/2021 | 654.00 | 0.00 | 654.00 | 0.00 | 648.00 | 5.00 | 13.09 | 59 | 7/5/2021 | 29,011.24 | 31953204 | 10592 | | 7/2/2021 |
| 6/20/2021 | (5.00) | Late Fee Assessment | | 6/5/2021 | 654.00 | 6.00 | 648.00 | 0.00 | 0.00 | (5.00) | 13.09 | | 6/5/2021 | 29,011.24 | 0 | 0 | | 6/20/2021 |
| 5/4/2021 | 3.95 | Fee Payment--PAYMENTUS ONLINE DEBIT CARD | SERVICE FEE | 6/5/2021 | 654.00 | 6.00 | 648.00 | 0.00 | 0.00 | 0.00 | 13.09 | | 6/5/2021 | 29,011.24 | 1165889 | 10596 | | 5/4/2021 |
| 5/4/2021 | 654.00 | Normal Payment--PAYMENTUS ONLINE DEBIT CARD | | 6/5/2021 | 654.00 | 6.00 | 648.00 | 270.91 | 383.09 | 0.00 | 13.09 | 29 | 6/5/2021 | 29,011.24 | 1165889 | 10596 | 682831 | 5/4/2021 |
| 4/5/2021 | 3.95 | Fee Payment--PAYMENTUS AGENT DEBIT CARD | SERVICE FEE | 5/5/2021 | 654.00 | 6.00 | 648.00 | 0.00 | 0.00 | 0.00 | 13.21 | | 5/5/2021 | 29,282.15 | 989264 | 10596 | | 4/5/2021 |
| 4/5/2021 | 654.00 | Normal Payment--PAYMENTUS AGENT DEBIT CARD | | 4/5/2021 | 654.00 | 6.00 | 648.00 | 214.88 | 439.12 | 0.00 | 13.21 | 33 | 5/5/2021 | 29,282.15 | 989264 | 10596 | 672775 | 4/5/2021 |
| 3/3/2021 | 3.95 | Fee Payment--PAYMENTUS ONLINE DEBIT CARD | SERVICE FEE | 4/5/2021 | 654.00 | 6.00 | 648.00 | 0.00 | 0.00 | 0.00 | 13.31 | | 4/5/2021 | 29,497.03 | 770460 | 10596 | | 3/3/2021 |
| 3/3/2021 | 660.00 | Normal Payment--PAYMENTUS ONLINE DEBIT CARD | | 4/5/2021 | 654.00 | 6.00 | 648.00 | 283.83 | 376.17 | 0.00 | 13.31 | | 4/5/2021 | 29,497.03 | 770460 | 10596 | 661050 | 3/3/2021 |

EXHIBIT "4"

Chase Berger, Esq. (24115617)
GHIDOTTI BERGER, LLP
9720 Coit Road Suite 220-228
Plano, Texas 75025
Ph:  (305) 501-2808
Fax: (954) 780-5578
bknotifications@ghidottiberger.com

**Attorneys for Movant,**
Carvana, LLC, its successors and assigns

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | CASE NO.: 21-30214-hcm |
| | § | |
| **Fay Genice Parm,** | § | CHAPTER 13 |
| | § | |
| **DEBTOR,** | § | |
| | § | |
| **Carvana, LLC, its successors and assigns,** | § | |
| | § | |
| **MOVANT,** | § | |
| | § | |
| **Fay Genice Parm, and** | § | |
| **Stuart C. Cox, Trustee,** | § | |
| | § | |
| **RESPONDENTS.** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**PLEASE BE ADVISED THAT IT IS THE INTENTION OF MOVANT TO OFFER INTO EVIDENCE AT ANY HEARING ON THE MOTION FILED CONCURRENTLY WITH THIS AFFIDAVIT THIS AFFIDAVIT AND PAYMENT HISTORY PURSUANT TO THE FEDERAL RULES OF EVIDENCE, RULE 902(11).  THIS AFFIDVIT AND PAYMENT HISTORY ARE BEING PROVIDED TO YOU IN ADVANCE AS AN ADVERSE PARTY IN ORER TO ALLOW YOU A FAIR OPPORTUNITY TO CHALLENGE SAID RECORDS. YOU ARE HEREBY PLACED ON NTOICE OF THIS INTENTION AS REQURED BY THE FEDERAL RULES OF EVIDENCE, RULE 902(11).**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | CASE NO.: 21-30214-hcm |
| | § | |
| **Fay Genice Parm,** | § | CHAPTER 13 |
| | § | |
| **DEBTOR,** | § | |
| | § | |
| | § | |
| | § | |

**AFFIDAVIT IN SUPPORT OF**
**MOTION FOR RELIEF FROM AUTOMATIC STAY**

I _Jennifer Cruise_ , being duly sworn, depose and say:

1.      I am employed as a _Senior Manager_ with Carvana, LLC ("Movant") and am authorized to sign this affidavit on behalf of Movant.

2.      In the regular performance of my job functions, I am familiar with and have access to the business records maintained by Movant. These records, which include date compilations, electronically imaged documents, and others, are made at or near the time of date by, or from information provided by persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly by Movant. It is the regular practice of Movant's business to make and/or maintain these records including the records of any servicers of the loans, including the Subject Loan at issue in this action. Movant relies upon the accuracy of those records in conducting its business, including the Subject Loan at issue in this action.

3.      I regularly verify Movant's records, loan histories, correspondence, and communication histories. This entails reviewing, becoming familiar with, and participating in the review of documents related to loan accounts for Movant's loans. From my employment for Movant, I am familiar with its business operations and with the services that Movant offers to its customers.

4.      I have personally reviewed Movant's records as they related to the Subject Contract obligation referred to herein, and as to the following facts, I know them to be true of own knowledge or I have gained knowledge of them from my review of Movant's business records. If called upon to testify, I could and would competently testify to the following under oath.

5.      The borrower, **Fay Genice Parm** ("**Borrower**") executed a Contract in favor of Movant in the original principal amount of $29,780.86 ("Contract"). Movant is an entity entitled to enforce the Contract.  A true and correct copy of the Contract is attached as **Exhibit "1"** and is incorporated herein by reference for all purposes.

6.      All obligations (collectively, the "Obligations") of the Debtor under the Contract are secured by a 2019 JEEP GRAND CHEROKEE VIN #1C4RJEAGXKC776523 ("Vehicle") as evidenced by the Lien and Title Information ("Title") naming Movant as the lienholder thereof.  A true and correct copy of the Title is attached hereto as **Exhibit "2".**

7.      Subsequent to the execution of the Contract and Title, Debtor has filed for protection under Chapter 13 of Title 11 of the United States Code on March 18, 2021.

8.      Pursuant to Debtor's confirmed Plan, Debtor is required to make payments directly to Movant.

9.      As of October 26, 2021, the outstanding Obligations under the Contract total $30,780.86.

///

///

///

///

///

///

///

///

///

10.     As of October 26, 2021, the amount of delinquency owed to Movant was $2,636.00 with the account due for the July 5, 2021 payment and the last payment having been received on July 2, 2021.  A true and correct copy of the payment history is attached hereto as **Exhibit "3"**.

I solemnly affirm under penalty of perjury and upon personal knowledge that the contents of the foregoing affidavit are true.  EXECUTED on, _10|28|2021_____.

Further Affiant sayeth not.

_____

_Jennifer Crose_ (name)
_Senior Manager_ (title)
Carvana, LLC

State of _Arizona_____ )
County of _Maricopa_ )

Sworn/affirmed to and subscribed before me on this _27_ day of _October_, 20_21_.
Personally known [X] or produced identification [ ].
Type of identification produced _____.

_____
(Signature of Notary Public)
My commission expires _10/15/22_____
Notary seal

EXHIBIT "5"

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE WESTERN DISTRICT OF TEXAS

### EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | * | Chapter 13 |
| | * | |
| Fay Genice Parm | * | |
| | * | |
| Debtor(s) | * | BANKRUPTCY NO. 21-30214 |

## AMENDED
## CHAPTER 13 PLAN

Attached hereto and made a part hereof is the Debtor's Amended Chapter 13 Plan where a 2019 Jeep Grand Cherokee with Bridgecrest is being paid outside the plan.

DATED this the _Apr 13, 2021_.

Respectfully submitted,

_____
Fay Genice Parm

_____
EDGAR J. BORREGO, SBN 00787107
MIGUEL A. FLORES, SBN 24036574
Attorneys for Debtor(s)
2610 Montana Avenue
El Paso, TX 79903
(915) 566-4300 Telephone
(915) 566-1122 Facsimile
efile@tanzyborrego.com

## CERTIFICATE OF SERVICE

I certify that on _14_ day of _April_, 2021 a true and correct copy of the above and foregoing was served upon the following parties via electronic means as listed on the court's ECF noticing system or by regular first class mail:

_____
**Edgar J. Borrego/Miguel A. Flores**
Tanzy & Borrego Law Offices, P.L.L.C.

TB#40492/lr

Label Matrix for local noticing
0542-3
Case 21-30214-hcm
Western District of Texas
El Paso
Tue Apr  6 15:53:35 CDT 2021

U.S. BANKRUPTCY COURT
511 E. San Antonio Ave., Rm. 444
EL PASO, TX 79901-2417

American Express
PO BOX 297814
Fort Lauderdale, FL 33329-7814

American Express
c/o Becket & Lee
PO Box 3001
Malvern, PA 19355-0701

Americredit Financial Services
c/o Portfolio Recovery Associates
P.O. Box 41067
Norfolk, VA 23541-1067

(p)AMERICREDIT FINANCIAL SERVICS DBA GM FINAN
PO BOX 183853
ARLINGTON TX 76096-3853

Attorney General
10th & Constitution N.W.
Main Justice Bldg. #5111
Washington, DC 20530-0001

Bank of America
P.O. Box 31785
Tampa, FL 33631-3785

Bank of America
c/o Midland Credit Management
5775 Roscoe Ct.
San Diego, CA 92123-1356

Bell County Tax Assessor /Collector
550 E 2nd Ave, Belton
Belton, TX 76513-3203

Beneficial
PO Box 3425
Buffalo, NY 14240-3425

Beneficial
c/o Asset Acceptance
PO Box 2036
Warren, MI 48090-2036

CITI
P.O. Box 183173
Columbus, OH 43218-3173

Carvana, LLC
PO BOX 29018
PHOENIX, AZ 85038-9018

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

Chase
c/o National Credit Adjusters, LLC
327 W 4th
P.O. Box 3023
Hutchinson, KS 67504-3023

City of El Paso
c/o Bradley Balderrama
112 E. Pecan St. Suite 2200
San Antonio, TX 78205-1588

Claudio Flores Atty
521 Texas
El Paso, TX 79901-1417

Credit One
PO Box 60500
City of Industry, CA 91716-0500

Credit One
c/o American Infosource LP
4515 N. Santa Fe Ave
Oklahoma City, OK 73118-7901

Credit One
c/o Equable Ascent Financial
1120 W. Lake Cook Rd.
Buffalo Grove, IL 60089-1970

Credit One
c/o Midland Funding
P.O. Box 2011
Warren, MI 48090-2011

Credit One
c/o Recovery Management Systems Corp.
25 S.E. 2nd Avenue Suite 1120
Miami, FL 33131-1605

Credit One Bank
P.O. Box 98873
Las Vegas, NV 89193-8873

Dell Computer/Web Bank
12234 N IH 35 SB Bldg B
Austin, TX 78753-1744

Discover
P.O. Box 6105
Carol Stream, IL 60197-6105

Dish Network
P.O. Box 33977
Denver, CO 80233-0977

(p)US DEPT OF HOUSING AND URBAN DEVELOPMENT R
MARCUS R PATTON
OFFICE OF GENERAL COUNSEL
801 CHERRY ST UNIT 45
FT WORTH TX 76102-6882

First National Bank of Marin
P.O. Box 98873
Las Vegas, NV 89193-8873

First National Bank of Marin
c/o LVNV Funding
P.O. Box 10587
Greenville, SC 29603-0587

First Premier Bank
P.O. Box 5524
Sioux Falls, SD 57117-5524

HSBC
Card Services
P.O. Box 80084
Salinas, CA 93912-0084

HSBC
c/o PRA Receivables Management, LLC
P.O. Box 41021
Norfolk, VA 23541-1021


(p) INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
Special Procedures Staff- Insolvency
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
c/o United States Attorney
Civil Process Clerk-IRS
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216-5512


James W. Parm
2303 Goode Cir.
Killeen, TX 76543-5042

Keith C. Gorman
1100 Montana Ave. Ste 101
El Paso, TX 79902-5547

Nationwide Credit, Inc.
3600 E University Dr.
Suite B1350
Phoenix, AZ 85034-7296


PHH Mortgage
3000 Leadenhall
Mount Laurel, NJ 08054

Providian
c/o Equable Ascent Financial
1120 W. Lake Cook Rd.
Buffalo Grove, IL 60089-1970

Rushmore Loan Management Services
P.O. Box 52708
Irvine, CA 92619-2708


Rushmore Loan Management Services
c/o Brice, Vander Linden & Wernick LLP
9441 Lyndon B Johnson Fwy #250,
Dallas, TX 75243-4640

Rushmore Loan Management Services
c/o McCarthy Holthus
P.O. Box 866668
Plano, TX 75086-6668

Rushmore Loan Management Services LLC
c/o McCarthy Holthus, LLP
1255 West 15th Street, Suite 1060
Plano, TX 75075-4220


Tax Assessor/Collector
P.O. Box 2992
El Paso, TX 79999-2992

The Bank of Missouri
P.O. Box 85710
Sioux Falls, SD 57118-5710

Title Max
1841 N. Lee Trevino
El Paso, TX 79936-4111


U.S. Attorney/FHA/HUD/IRS/VA
601 N.W. Loop 410
Suite 600
San Antonio, TX 78216-5512

United States Trustee - EP12
U.S. Trustee's Office
615 E. Houston, Suite 533
P.O. Box 1539
San Antonio, TX 78295-1539

Vervent
10182 Telesis Ct #300
San Diego, CA 92121-4777


Veterans Administration
Attn:  Support Services Division (243)
701 Clay Avenue
Waco, TX 76799-0001

Webbank
215 S State St # 800
Salt Lake City, UT 84111-2339

Fay Genice Parm
509 Gentry Way
El Paso, TX 79928-7217


Miguel Alejandro Flores
Tanzy & Borrego Law Offices
2610 Montana
El Paso, TX 79903-3712

Stuart C. Cox
El Paso Chapter 13 Trustee
1760 N. Lee Trevino Dr.
El Paso, TX 79936-4565


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Americredit Financial services
dba Gm Financial
P.O. Box 183853
Arlington, TX 76096

Chase
PO Box 6294
Carol Stream, IL 60197

FHA/HUD
451 7th Street S.W.
Washington, DC 20410

Internal Revenue Service
Special Procedures Branch
300 E. 8th Street
Stop 5022
Austin, TX 78701

(d)Providian
P.O. Box 9016
Pleasanton, CA 94566-9016

End of Label Matrix
Mailable recipients       55
Bypassed recipients        0
Total                     55

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS - EL PASO

| IN RE: | § | CASE NO. 21-30214 |
|---|---|---|
| Fay Genice Parm | § | |
| | § | |
| | § | |
| | § | |
| Debtor(s) | § | Chapter 13 |

## CHAPTER 13 PLAN AND MOTIONS FOR
## VALUATION AND LIEN AVOIDANCE
### ☑ AMENDED

If you oppose the Plan's treatment of your claim or any provisions of this Plan, YOU MUST FILE AN OBJECTION to confirmation no later than fourteen (14) days before the confirmation hearing date.

Use of the singular word "Debtor" in this Plan includes the plural where appropriate. All section references ("§") are to the Bankruptcy Code unless otherwise noted.

The following matters may be of particular importance. *Debtors must check one box on each line to state whether or not the Plan includes each of the following items.* If an item is checked as "Not Included" or if both boxes are checked, the provision will be ineffective if set out later in the Plan.

### 1. Plan Overview

| 1.1 | A limit on the amount of secured claim based on valuation of collateral for the claim, set out in Sections 7.8 and 7.9, which may result in a partial payment or no payment at all to the secured creditor | ☐ Included | ☑ Not Included |
|---|---|---|---|
| 1.2 | Avoidance of a wholly unsecured lien or judicial lien or nonpossessory, nonpurchase-money security interest, set out in Sections 7.9 and 7.10 | ☐ Included | ☑ Not Included |
| 1.3 | Nonstandard provisions, set out in Section 8 | ☑ Included | ☐ Not Included |

### 2. Plan Summary

2.1 Debtor's Plan payment will be $2218 per month, paid by ☐3rd Party Epay (if accepted by Trustee), ☑Payroll Order $1,023.00 to be deducted from Debtor's Bi-weekly wages, or ☐Direct (Money Order or Cashier's Check). Variable payments, if applicable, are proposed as follows:

| Months | Amount of Monthly Payment |
|---|---|
| Payment # 1 = $2218 X 60 months, Mos Begin: 1, End: 60, Total$ 133080 | |
| 1 - 60 | $2218 |

The term of the Plan is 60 months. The gross amount to be paid to the Trustee (sometimes, the "base amount") is $133,080.00.

2.2 Under this Plan, the Trustee will pay all allowed priority claims in full; all allowed secured claims to the extent of the value of the collateral or the amount of the claim, whichever amount is provided for in Sections 7.7 and 7.8; and approximately 5% to allowed general unsecured claims. The specific treatment for each class of creditors is set forth below in the Plan.

**This Plan does not allow claims. A creditor must file a proof of claim by the applicable deadline to receive distributions under the plan as confirmed. Creditors are referred to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Western District of Texas, and the Standing Order for Chapter 13 Administration for this Division for information on procedures and deadlines.**

2.3 The aggregate value of Debtor's non-exempt assets is: $ 0.00 .

### 3. Vesting of Estate Property

☐ Upon confirmation of the Plan, all property of the estate shall vest in the Debtor, shall not remain property of the estate, and shall not be subject to the automatic stay of § 362; provided however, in the event of conversion of this case to chapter 7 the property of the Debtor as of the petition date should revest in the estate.

☑ Upon confirmation of the Plan, all property of the estate shall not vest in the Debtor, shall remain property of the estate, and shall remain subject to the automatic stay of § 362.

### 4. Tax Refunds and Annual Tax Returns

**4.1    Tax Refunds.**

All tax refunds received by Debtor (or either Debtor if a joint case) while the chapter 13 case is pending shall be allocated as set forth below:

1) The total amount of the aggregate tax refund(s) received for any tax period that exceeds $2,000.00 shall, upon receipt, be paid and turned over to the Trustee as additional disposable income and such amount shall increase the base amount of the Plan. The Plan shall be deemed modified accordingly, and the Trustee will file a notice of plan modification within 21 days of receipt of the tax refund;

2) This $2,000.00 annual limit shall apply to both joint-debtor and single-debtor cases;

3) The $2,000.00 otherwise retained by Debtor must first be applied to any Plan arrearages;

4) Notwithstanding subparagraph (1) above, Debtor may file a notice to retain the portion of the tax refund otherwise payable to the Plan under subparagraph (1) with twenty-one (21) day negative notice as set forth in Local Rule 9014(a) if, at the time of receipt of a refund, Debtor's Plan provides for the payment of 100% of allowed general unsecured claims within the term of this Plan. If the Trustee does not object within the twenty-one (21) day negative notice period, Debtor may retain that portion of the tax refund.

The Trustee is hereby authorized to endorse a tax refund check if the check is made payable to Debtor.

**4.2    Annual Tax Returns.**

Debtor shall provide a copy of the annual post-petition income tax return to the Trustee if requested to do so or if required to do so pursuant to the Standing Order for Chapter 13 Administration for the division in which this case is pending. If this is a joint case, each Debtor shall comply with this provision if separate returns are filed.

### 5. Pre-Confirmation Adequate Protection Payments

Pre-confirmation adequate protection payments under § 1326(a)(1) and § 502(b) shall be made as provided below, and pursuant to the Standing Order for Chapter 13 Administration for the division in which this case is pending:

A. All pre-confirmation payments i f required by § 1326(c) and proposed below will be made by the Chapter 13 Trustee without further order of the Court. Such payments shall be considered payments pursuant to § 1326(a) and 28 U.S.C. § 586(e).

B. If the Debtor fails to make the required plan payments and funds on hand are not sufficient to pay all pre-confirmation adequate protection payments due, then such payments shall be paid on a pro rata basis, with the exception of ongoing monthly mortgage payments made by the Trustee.

C. Monthly pre-confirmation adequate protection payments will be calculated from the date the first plan payment is due. To receive adequate protection payments, a secured creditor must have on file with the Clerk of the Court a timely filed and allowed proof of claim. The proof of claim must include proof of the creditor's security interest and shall be served on the Chapter 13 Trustee, the Debtor and Debtor's attorney. The Trustee will thereafter commence disbursement of preconfirmation adequate protection payments in the next regularly scheduled monthly disbursement following the filing of the claim, subject to normal operating procedures.

D. The Debtor proposes the following pre-confirmation adequate protection ("AP") payments. The Trustee shall apply pre-confirmation adequate protection payments to accrued interest, if applicable, and then to principal. AP payments shall cease upon confirmation of the Plan.

| Creditor & Collateral | Monthly AP Payment | Interest Rate, If Claim is Over Secured | Other Treatment Remarks |
|---|---|---|---|
| -NONE- | | | |

### 6. Executory Contracts / Unexpired Leases / Contracts for Deed

6.1    Pursuant to § 1322(b)(7) and § 365, Debtor hereby elects to assume the following executory contracts, unexpired leases, and/or contracts for deed as follows:

| Creditor | Property or Contract Description | Current Monthly Payment to be Paid Directly by the Debtor |
|---|---|---|
| Claudio Flores Atty | Family Attorney | 0.00 |

6.2    Pursuant to § 1322(b)(7) and § 365, Debtor hereby elects to reject the following executory contracts, unexpired leases, and/or contracts for deed:

| Creditor | Property |
|---|---|
| -NONE- | |

## 7. Treatment of Claims

7.1    Administrative Claims & Request for Attorney Fees.

The Trustee shall collect the allowed statutory Trustee fee upon receipt of all monies paid by or on behalf of Debtor. All other administrative claims, including Debtor's attorney fees, shall be paid according to the terms of this Plan.

Upon confirmation of the Plan, the Court approves and awards $3,600.00 to Debtor's attorney as an administrative claim for legal services performed in this case in accordance with the applicable benchmark. Debtor's attorney may file applications for an additional award of attorney fees pursuant to the Bankruptcy Code, Local Bankruptcy Rules for the Western District of Texas, and the Standing Order for Chapter 13 Administration for the division in which this case is pending. If additional monies are available, the Trustee may, within his or her discretion, disburse such funds to this class on a pro rata basis. The Trustee shall disburse payments to the attorney as follows:

| Debtor's Attorney | Amount of Fee Paid Through the Plan | Payment Method: | Additional Provisions |
|---|---|---|---|
| Miguel Flores 24036574 | $2,600.00 | ☑ Standing Order ☐ Other | |

7.2    Priority Claims.

All allowed claims entitled to priority under § 507(a), except § 507(a)(2), shall be paid in full in deferred distributions by the Trustee, unless: (1) the holder of a particular claim agrees to a different treatment of such claim; or (2) such claim is provided for under § 1322(a)(4). Unless the Plan provides otherwise, the distributions shall be made by the Trustee. If the Plan identifies a creditor's claim as a priority claim and the creditor files the claim as a general unsecured claim, the claim shall be treated as a general unsecured claim unless otherwise ordered by the Court. If any priority claim is filed for a debt that was either not scheduled or scheduled as a general unsecured claim, the claim shall be allowed as a priority claim unless otherwise ordered by the Court. Allowed priority claim(s) shall be paid without interest, unless otherwise ordered by the Court or unless specifically allowed under § 1322(b)(10) and provided for below.

The amount set forth in the Plan is an estimate and if the actual allowed claim is in a different amount, the amount to be paid pursuant to the Plan shall be the amount due on the allowed claim.

Domestic Support Obligations ("DSO"). The Trustee shall pay all pre-petition DSO claims through the Plan unless the Court orders otherwise. Debtor shall pay all DSO payments that accrue post-petition directly to the holder, or the holder's agent, pursuant to the terms of the DSO.

The Trustee shall disburse payments to the following creditors holding priority claims:

| Creditor | Description | Est. Claim Amount | Est. Monthly Payment |
|---|---|---|---|
| Internal Revenue Service | Taxes and certain other debts owed to governmental units | $4,408.00 | Pro-Rata paid after secured creditor |

If additional monies are available, the Trustee may, within his or her discretion, disburse such funds to this class on a pro rata basis.

7.3    Arrears on Assumed Executory Contracts/Leases/Contracts for Deed.

The Trustee shall disburse payments for arrears to creditors holding assumed executory contracts, leases, and/or contracts for deeds. The amounts listed below by Debtor are estimates. If a creditor files a proof of claim and the claim for arrears or the

ongoing monthly payment is in a different amount than stated below, the payments under the Plan shall be based on the creditor's claim unless a different amount is established by court order.

Those creditors holding claims within this class are as follows:

| Creditor & Collateral | Arrears & Treatment of Arrears Through the Plan | Amount of Ongoing Monthly Payment Through the Plan |
|---|---|---|
| -NONE- | | |

**7.4    Collateral to be Surrendered.**

Upon the entry of an order confirming the Plan or an order modifying the Plan, the stay shall automatically terminate with regard to the collateral surrendered. Upon the entry of such order, the creditor shall have ninety (90) days from the date of the order to file a claim or amended claim as to any deficiency balance that may remain, and such deficiency balance will be paid as a general unsecured claim. Any such claim is subject to objection.

Debtor surrenders the following collateral:

| Creditor | Collateral | Location of Collateral |
|---|---|---|
| -NONE- | | |

**7.5    Creditors to be Paid Directly by Debtor (Other Than Mortgage Creditors), by a Third Party, or by a Co-Debtor. [USE ONLY IF THERE IS NO DEFAULT]**

Creditors within this class shall retain their liens on the collateral that is security for the claim until the claim has been paid in full as determined by the note and/or applicable nonbankruptcy law.

If certain claims are paid directly by Debtor to creditor, Debtor shall be deemed acting as a disbursing agent under the Plan for payment of such claim. Such payments shall be made in addition to the payments by Debtor to the Trustee and are deemed to be payments made pursuant to the Plan.

The following creditors shall be paid directly by Debtor, a Third Party, or a Co-Debtor:

| Creditor | Collateral | Debt Owed | Monthly Payment | Remarks | Identify Payer |
|---|---|---|---|---|---|
| Bell County Tax Assessor /Collector | 2303 Goode Cir. Killeen, TX 76543 | $0.00 | $0.00 | | PHH Mortgage |
| Bridgecrest | 2019 Jeep Grand Cherokee | $29,709.94 | $654.00 | | Debtor |
| Tax Assessor/Collector | 509 Gentry Way El Paso, TX 79928 El Paso County | $0.00 | $0.00 | | Rushmore Mortgage |

**7.6    Mortgage Creditors: Ongoing Mortgage Payments & Direct Mortgage Payments on Debtor's Principal Residence.**

Unless the Debtor is current on the mortgage on the petition date, or otherwise provided for under <u>PLAN PROVISIONS</u> 8. Nonstandard Plan Provisions, the Trustee shall pay all postpetition monthly mortgage payments to the mortgagee. Ongoing mortgage payments will be in the amount stated in the allowed proof of claim or pursuant to a Court Order. If Debtor makes a Plan payment that is insufficient for the Trustee to disburse all ongoing mortgage payments required below, the Trustee shall hold plan payments until a sufficient amount is received to make a full ongoing mortgage payment. Debtor shall provide to the Trustee all notices received from Mortgage Creditors including, statements, escrow notices, default notifications, and notices concerning changes of the interest rate if a variable rate mortgage. The automatic stay is modified to permit Mortgage Creditors to issue such notices.

The Trustee shall be authorized to make changes to the ongoing monthly mortgage payments based on Notice filed pursuant to Bankruptcy Rule 3002.1(b) and to pay fees, expenses, and charges based on Notice filed pursuant to Bankruptcy Rule 3002.1(c). The Trustee may request that the Debtor file amended Schedules I and J, and the Debtor shall do so on or within thirty (30) days after receiving such a request from the Trustee. If Debtor lacks the disposable income to pay the ongoing mortgage payment, the Trustee may seek dismissal. The Debtor or the Trustee may seek to modify the Plan based on Debtor's current income, Debtor's ongoing mortgage payment obligations, or as otherwise provided in § 1329.

Alternatively, upon the filing by a Mortgage Creditor of a Notice pursuant to Bankruptcy Rule 3002.1(b) or 3002.1(c), the Trustee may file a Notice of Increase of Plan Payment with the Court if the Trustee reasonably believes that, under the circumstances, the increased payment should be Debtor's responsibility. The Trustee shall serve the Notice of Increase of Plan Payment on Debtor and Debtor's counsel. Such circumstances include but are not limited to: (1) increase in the mortgage payment or claim for expense is caused by Debtor's failure to pay tax, insurance or other obligations to the

mortgagee that the Debtor was required to pay directly; (2) cases in which the Debtor is paying less than the Debtor's full disposable income because the Debtor has agreed to pay a 100% dividend to general unsecured creditors; and (3) cases where, because of the increase due the Mortgage Creditor, the current Plan would fail to pay fully the amount provided under the Plan to allowed secured, priority, and administrative claims and any required amount to be paid to general unsecured claims under the terms of the confirmed Plan by reason of § 1325(a)(4) or otherwise.

The amount set forth in a Notice of Increase of Plan Payment shall become the modified Plan payment, and the Plan base shall be correspondingly increased. The Debtor must file a motion to modify Plan, supported by amended Schedules I and J as well as income verification, if the Debtor believes there is not, at that time, sufficient disposable income to pay the increased Plan payment or there is otherwise basis to amend the Plan rather than pay the increased Plan payment. The Debtor's motion to modify Plan shall be filed no later than thirty (30) days after Trustee's Notice of Increase in Plan Payment is filed.

It is possible that a change in the ongoing mortgage payment will affect the distribution to the unsecured creditors, and this provision of the Plan shall serve as adequate notice of the possibility.

If Debtor is current as of the petition date and elects to pay the ongoing mortgage directly but subsequently defaults, Debtor should file a motion to modify the Plan within thirty (30) days of receiving notice of the default to provide for the payment of the post-petition mortgage arrears. The future ongoing mortgage payments shall be paid by the Trustee. The motion to modify the Plan must state the name, address, and account number of the Mortgage Creditor to whom payments are to be made; the date the Trustee is to commence the ongoing mortgage payments; and the treatment of the post-petition delinquency including the gap between the date when Debtor modified the Plan and the date on which the Trustee is to commence the ongoing mortgage payments. The Trustee may also file a motion to modify the Plan in the event of a post-petition default.

The Standing Order for Chapter 13 Administration for the division in which this case is pending as to ongoing mortgage payments shall also apply.

For cause shown, Debtor may deviate from the procedures set forth in this provision of the Plan provided that Debtor sets forth cause, with specificity, in PLAN PROVISIONS 8. Nonstandard Plan Provisions. The Trustee and any party in interest may object. Debtor shall have the burden of proving at any hearing on confirmation of the Plan cause for such deviation. Avoidance of administrative fees alone shall not be considered cause.

The amounts set forth below are Debtor's estimate and the allowed claim shall control as to the amounts. Those creditors holding a secured claim with ongoing mortgage payments are as follows:

| Creditor | Property Address | Monthly Mortgage Payment | Interest Rate (for informational purposes only) | Payment Due Date (per contract) | Paid By: |
|---|---|---|---|---|---|
| PHH Mortgage | 2303 Goode Cir. Killeen, TX 76543 | $0.00 | 6.00% | | ☐ Trustee (Conduit) ☑ Debtor (Direct) |
| Rushmore Loan Management Services | 509 Gentry Way El Paso, TX 79928  El Paso County | $1,348.00 | 6.00% | 1st of the month | ☑ Trustee (Conduit) ☐ Debtor (Direct) |

**7.7      Secured Claims: Cure Arrears on Long Term Debt and Mortgage Arrears on Debtor's Principal Residence.**

Arrears on long term debt and pre-petition mortgage arrearage claims shall be paid pursuant to the payment schedule set forth below. Upon discharge, if the pre-petition arrears and the post-petition ongoing payments are current on Debtor's Principal Residence, the default will be deemed cured and the note reinstated according to its original terms, including the retention of any security interest. The pre-petition arrears set forth below is an estimate only and the Trustee shall pay the pre-petition arrears based on the proof of claim as filed by the creditor, unless a different amount is allowed pursuant to a court order.

If there are insufficient funds to pay the monthly payment to claims within this class, creditors in this class shall be paid on a pro rata basis. If additional monies are available, the Trustee may, within his or her discretion, disburse such funds to this class on a pro rata basis.

The following secured creditors hold claims for arrears in this class:

| Creditor | Collateral Description | Estimated Arrearage | Monthly Payment or Method of Distribution | Interest Rate (if applicable) | Remarks |
|----------|------------------------|---------------------|-------------------------------------------|-------------------------------|---------|
| Rushmore Loan Management Services | 509 Gentry Way El Paso, TX 79928  El Paso County | $18,872.00 | Pro-Rata | 6.00% | 13 mo(s) arrears incld. March 2021 |

**7.8  Secured Claims: Treatment of Claim and Motion to Value Collateral Pursuant to § 506; and 910 Day Claims/1 Year Claims.**

Creditors within this class shall retain their liens on the collateral that is security for their claims until the earlier of: (1) the date the underlying debt, as determined by non-bankruptcy law, has been paid in full; or (2) the date discharge is entered under § 1328. If the case is dismissed or converted without completion of all Plan payments, the liens shall be retained by the creditors pursuant to applicable non-bankruptcy law.

Debtor moves to value the collateral described below in the amounts indicated. The values as stated below represent the fair market value of the collateral pursuant to § 506(a)(2). Objections to the valuation of collateral proposed by this Motion and the Plan must be filed no later than fourteen (14) days before the confirmation hearing date. If no timely objection is filed, the relief requested may be granted in conjunction with the confirmation of the Plan.

The Trustee shall pay the allowed secured claims, which require the filing of a proof of claim, to the extent of the value of the collateral or the full payment of the claim as specified below, plus interest thereon at the rate specified in this Plan. Failure of the secured creditor to object will be deemed acceptance of the plan under § 1325(a)(5)(A) Except for secured claims for which provision is made to pay the full amount of the claim notwithstanding the value of the collateral, the portion of any allowed claim that exceeds the value of the collateral shall be treated as an unsecured claim under Section 7.11 below.

| Creditor | Collateral Description | Amount of Debt (Est) | Fair Market Value | Interest Rate | Equal Monthly Payment | Unsecured Claim | 910 Claim?* ** |
|----------|------------------------|----------------------|-------------------|---------------|-----------------------|-----------------|----------------|
| Title Max | 2006 BMW 3 Series Sedan | $2,000.00 | $4,800.00 | 6.00% | Pro-Rata | $0.00 | ☑ |

**\*** Debtor indicates, by notation (☑) that the collateral which secures the claim was purchased within 910 days if a vehicle or within 1 year if personal property pursuant to § 1325(a) (hanging paragraph).

If additional monies are available, the Trustee may, within his or her discretion, disburse such funds to this class on a pro rata basis.

If any secured proof of claim is timely filed for a debt that was either not scheduled or scheduled as unsecured, the claim shall be allowed as secured unless otherwise ordered by the Court. Said claim shall be paid under the Plan with interest at  **5.00** % per annum and shall be paid on a pro rata basis as funds become available after payment of any fixed equal monthly payments payable to other secured creditors listed above.

**7.9    Wholly Unsecured Claims.**

**NOTICE OF DEBTOR'S INTENTION TO STRIP A WHOLLY UNSECURED LIEN**

Debtor proposes a Chapter 13 plan that strips your lien secured by real property to a wholly unsecured claim. The Plan alleges that the value of the real property is less than the amount owed on all liens that are senior in priority to your lien. Your claim will receive no distributions as a secured claim but will receive distributions as a general unsecured claim.

If you disagree with the treatment proposed by the Plan that will terminate your lien and that will pay your claim as a general unsecured claim, you must file an objection to the Plan no later than fourteen (14) days before the confirmation hearing date. If you fail to object, the Bankruptcy Court may approve the Plan without further notice.

Upon entry of a Discharge Order, the holder of the lien is required to execute and record a full and unequivocal release of its liens, encumbrances and security interests secured by the real property and to provide a copy of the release to the Trustee, Debtor, and Debtor's counsel. Notwithstanding the foregoing, the holder of a lien that secures post-petition homeowners' association fees and assessments will be allowed to retain its lien, but only to secure (i) post-petition assessments; and (ii) other post-petition amounts, such as legal fees, if such post-petition amounts are incurred with respect to post-petition fees and assessments, and are approved by the Court, if incurred during the pendency of the bankruptcy case.

This provision does not apply if a secured creditor does not file a proof of claim.

Notice of this Plan provision must be provided by the Debtor to the secured creditor in accordance with Fed. R. Bankr. P. 7004.

The following claims shall be paid as a general unsecured claim as there is no equity in the collateral to secure the claim.

If the case is dismissed or converted without completion of all Plan payments, the liens shall be retained by the creditors pursuant to applicable non-bankruptcy law.

Those creditors holding secured claims that are wholly unsecured and are within this class are as follows:

| Creditor | Collateral | Fair Market Value | Amount of Senior Lien(s) |
|---|---|---|---|
| -NONE- | | | |

**7.10    Motions to Avoid Lien Pursuant to § 522(f).**

The Bankruptcy Code allows certain liens to be avoided. If a lien is avoided, the creditor's claim, to the extent allowed, will be treated as a general unsecured claim under Section 7.11. The amount of the debt set forth in the Plan is Debtor's estimate and if the actual allowed claim is in a different amount, the unsecured amount to be treated pursuant to the Plan shall be the amount due on the allowed claim.

If the case is dismissed or converted without completion of all Plan payments, the liens shall be retained by the creditors pursuant to applicable non-bankruptcy law.

Debtor moves under § 522(f) to avoid the following liens that impair exemptions. Objections to this treatment must be filed no later than fourteen (14) days before the confirmation hearing date. If no timely objection is filed, the relief requested may be granted in conjunction with the confirmation of the Plan. (Debtor must list the specific exempt property that the lien impairs and the basis of the lien—e.g. judicial lien, non-PMSI, etc.).

| Creditor | Property Subject to Lien | Lien Amount to be Avoided | Secured Amount Remaining | Type of Lien |
|---|---|---|---|---|
| -NONE- | | | | |

**7.11    General Unsecured Claims.**

Creditors within this class hold general unsecured claims that are not otherwise provided for in the Plan, including but not limited to creditors' unsecured claims arising by reason of lien avoidance or lien strip, rejection of executory contracts or leases, or bifurcation of a claim. Payments to holders of allowed claims within this class shall be disbursed on a pro rata basis and shall be disbursed after payment of other creditors. The amounts set forth as unsecured claims in Debtor's schedules are estimates only, and payments to holders of allowed general unsecured claims shall be based upon allowed claim amounts.

### 8. Nonstandard Plan Provisions

**Nonstandard Plan Provisions.**
The following Plan provisions will be effective only if there is a check in the box in Section 1.3 of the Plan.

1. The Debtor shall pay into the Plan for the payment of creditors a full payment within 30 days of filing this Plan or petition and each subsequent payment on the same day of each month thereafter for the duration of the Plan.

2. TAX CLAIMS: Notwithstanding section 7.8 of the Plan, any unscheduled secured claim filed by any taxing authority shall be paid under the plan with the interest rate specified on the face of the claim.

3. SURRENDER COLLATERAL: In the event the automatic stay is lifted at any time during the case, the creditor that was granted relief from the automatic stay will have 90 days from the date the stay is lifted to amend their claim for the deficiency amount, if any. In the event the creditor does not amend their claim, the claim shall be deemed to have been satisfied by the foreclosure, and the trustee will not disburse any further payments.

4. Duly filed and allowed unsecured claims shall receive a pro-rata distribution after payment of all Priority, Secured and administrative expenses. If unsecured claims will not be paid in full, neither payments nor duration of the Plan will be increased merely because the Plan projected a higher percentage payout based upon information available to the Debtor at the time the Plan was filed. The percentage payout to general unsecured creditors is just an estimate and the actual payout may differ based on claims actually filed. Any balance remaining on dischargeable unsecured claims after the payments provided for herein, shall be discharged.

5. Creditors holding claims against the Debtor's real estate which are being treated pursuant to 11 U.S.C. 1322(b)(5) may send monthly billing statements to the Debtor, but may not seek payment directly from the Debtor for any pre-petition arrearage claim.

6. Notwithstanding any other provision on this Plan, the Debtor(s) shall be entitled to the receipt and use of any income tax refund received during the Plan, and shall not be required to turn it over to the Trustee.

**Failure to place any nonstandard provision in this section results in the nonstandard provision being void.**

I certify that all nonstandard plan provisions are contained in this section of the Plan

Date: 4/13/2021

Miguel Flores 24036574
Debtor's Attorney
State Bar No.    24036574 TX

Fay Genice Parm
Debtor

## Certificate of Service

Debtor shall be responsible for service of the Plan on the Trustee and all parties in interest.

EXHIBIT "6"

**The relief described hereinbelow is SO ORDERED.**


**Signed June 10, 2021.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**

---

**United States Bankruptcy Court for the Western District of Texas/El Paso Division**

| | |
|---|---|
| STUART C. COX, CHAPTER 13 TRUSTEE<br>1760 N. Lee Trevino Drive<br>El Paso, TX  79936 | Case Number: 21-30214-HCM Chapter 13 |
| | **ORDER CONFIRMING THE PLAN** |
| IN RE:  FAY GENICE PARM<br><br>509 GENTRY WAY<br>EL PASO, TX 79928 | |
| Debtor's SSN:   ###-##-9796 | TANZY & BORREGO LAW OFFICES PLLC<br>2610 MONTANA  AVE.<br>EL PASO, TX 79903-3712 |

ORDER CONFIRMING THE PLAN

The Debtor represents in order to obtain plan Confirmation that the Chapter 13 Plan of Debtor(s) (hereinafter "Debtor") has been transmitted to all creditors.  Further the Debtor represents that the Debtor's plan, or amended plan filed on 04/14/2021, and hereafter referred to as the plan, satisfies the requirements of 11 U.S.C. § 1325.

Accordingly, it is ORDERED that

(1)  The Chapter 13 Plan is confirmed.

(2)  Unless otherwise provided below or by other Court order, property of the estate shall not revest in Debtor until the earlier of discharge of Debtor or dismissal of the case; and

(3)  Notwithstanding any provision of the plan, a creditor must timely file a proof of claim with the clerk of Court in order to receive a distribution under this plan.

(4)  The debtor shall file a motion to modify the plan on the 13th month of the plan to ensure
       compliance with the 60 month rule and in conjunction with a loan modification agreement.

The Clerk is directed to serve a copy of this Order upon Debtor(s), counsel for Debtor(s), the Trustee, and all
creditors and parties who have filed a notice of appearance in the case.

**IT IS SO ORDERED.**

### 

Confirmation Recommended by

/s/ Stuart C. Cox
STUART C. COX, CHAPTER 13 TRUSTEE
1760 N. Lee Trevino Drive
El Paso, TX  79936